***********
The Full Commission reviewed the prior Order and prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Key Risk Management Services was the carrier on the risk.
4. Plaintiff's average weekly wage will be determined by wage information which was provided by defendants at the time of the hearing before the Deputy Commissioner.
5. The parties have stipulated to Consolidated Composite Stipulated Documents #1, consisting of 136 pages. The stipulated document was further supplemented following the hearing before the Deputy Commissioner with additional medical records from HealthServe Medical Center consisting of pages 137-295.
 ***********
Based on all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At that time of the injury giving rise to this claim, plaintiff was employed as a security guard for J.P. Looney's Restaurant, a sports bar.
2. On June 30, 1998, plaintiff escorted a customer from the premises of J.P. Looney's at which time a fight started. Plaintiff was hit multiple times on the left side of his head. The assault was witnessed by another patron, Jason Streck, who testified at the hearing before the Deputy Commissioner. Mr. Streck saw that, after plaintiff was struck the first time, he appeared to be disoriented and "wobbled" from side to side. It appeared to Mr. Streck that plaintiff's left eye was not moving in conjunction with his right eye. Plaintiff was holding his hand up to his head and complaining of pain.
 While he was being hit, plaintiff felt like his arms would not move. Once the blows stopped, plaintiff attempted to dial 911 on his cell phone. He had double vision. The police came to the scene. The police report corroborates the reports of the assault by plaintiff and Mr. Streck. Plaintiff immediately reported the assault to the sports bar's manager. He felt ringing in his ear and had swelling of his face and a great deal of pain. He held a bag of ice to his head. He was unable to work the rest of his shift although he remained on the premises of the sports bar.
4. Plaintiff testified that the first doctor he saw after his injuries was Dr. Newman. However, he actually was first seen at HealthServe Medical Center by Dr. Victoria Rankings on June 30, 1998. He reported having ringing in his left ear. He had a knot on the left side of his face above and behind his left ear. He also had swelling on the left side of his face with decreased sensation.
5. Plaintiff saw Dr. David H. Newman on July 2, 1998 for gallstones. He also discussed the assault with Dr. Newman who noted that plaintiff had a bruise on the left side of his face with tingling going down his jaw and pain. Dr. Newman told him to expect discomfort for about six weeks and to see an oral surgeon after that if his pain continued. It was plaintiff's understanding that Dr. Newman believed that he could not be evaluated for at least three to four months so that the swelling could go down. After the swelling decreased, plaintiff started to notice popping and cracking in his jaw. He started to feel that he had grit in his mouth. He went to see Dr. Joseph L. Miller, an oral surgeon.
6. Prior to the assault, plaintiff had not had any problems moving his jaw from side to side or with feeling like he was chewing grit. He was also having sharp pains, ringing in his ear, and locking of his jaw, all of which were new symptoms after he was assaulted. Plaintiff had never had any other injuries to his head, mouth or face prior to the assault at defendant's sports bar.
 Dr. Miller, an expert in oral and maxillofacial surgery, first saw plaintiff on December 14, 1998. Plaintiff reported having been assaulted and hit on the left side of his face, having pain in his left jaw with one event of his mouth locking open. Dr. Miller noted plaintiff had some "right-left lateral movement" of his jaw. Dr. Miller recommended starting with conservative therapy, which consisted of wearing a splint. Plaintiff received and wore this splint.
8. When Dr. Miller saw plaintiff again on May 26, 1999, he was continuing to have pain that Dr. Miller felt was muscular in origin. Dr. Miller recommended physical therapy. He then saw plaintiff on November 29, 1999 for a fractured tooth which more likely than not resulted from clinching. Popping, clicking and clinching of the jaw can all be the result of trauma to the jaw area, because "you can disrupt the mechanism that allows your jaw to open and close properly by an injury to the face." Dr. Miller testified and the Full Commission finds as a fact that plaintiff's symptoms after the June 30, 1998 assault likely occurred as a result of the assault.
9. Dr. Miller's treatment was the direct result of the development of these symptoms after the assault. Dr. Miller wanted to evaluate plaintiff again to say what additional treatment might be needed. Plaintiff may have suffered a fracture of the left zygoma that could have healed by the time Dr. Miller saw him. According to Dr. Miller,
 Well, a blow is blunt trauma. Anytime one has blunt trauma, especially to the head and neck region, there are many many sensory nerves that exit the skull on the cheekbone, in the maxilla, in the lower jaw. If that nerve is crushed between the blunt trauma and the bone, it may not repair itself to 100% and as a result it can still be reactive months or even years later, either through what we call a paresthesia, which is an altered sensation, or a hyperesthesia, which is an excited sensation.
10. As a result of his compensable injury, plaintiff had paresthesia of his left posterior maxillary teeth. Dr. Miller testified, and the Full Commission finds as fact, that trauma may not develop into a problem with the jaw joint until "several weeks or even a month or two after the initial injury." Even if plaintiff had had an abnormal bite or inherent defect in his joint prior to his injury, it became symptomatic based on the injury he sustained.
11. Plaintiff did not have the additional treatment recommended by Dr. Miller and Dr. Willis, because he did not have the money.
12. At the time of the hearing, plaintiff continued to have constant ringing in his left ear.
13. Dr. Charles Keith Willis, a board-certified expert in adult neurology and neuromuscular disease, testified that he had seen plaintiff on February 7, 2000. Plaintiff reported decreased sensation in his left cheek. Dr. Willis recommended an MRI scan "to look for evidence of brain contusions that may have occurred with the assault that may lead to seizures down the road." He also recommended an EEG study to see if plaintiff had a seizure disorder. Plaintiff reported having had a blackout episode prior to having been seen. Even though he had not seen plaintiff since February, Dr. Willis would still recommend that these studies be done.
14. Dr. John C. Mundy is board-certified in otolaryngology and head and neck surgery. Plaintiff first saw Dr. Mundy on December 1, 1998. Plaintiff told Dr. Mundy that he had been struck on the left side of the face in June of 1998 while working at J.P. Looneys. Plaintiff was seeking an evaluation for tenderness of his face and reported popping sensations in his jaw joint when he opened his mouth. He also reported numbness in the area anterior to his ear and some blurred vision on the left side. Further, he reported a muffled sensation in his hearing on the left and ringing in his left ear.
15. Upon examination, Dr. Mundy noted that plaintiff had tenderness around his left eye and over his left jaw joint. His jaw appeared to lock open briefly when he opened his mouth wide. While he tested as having normal hearing on the right, his hearing on the left side showed a loss at certain frequencies. Because he had good understanding of speech, Dr. Mundy sought repeat testing.
16. Plaintiff returned to Dr. Mundy on April 6, 1999. He was continuing to have ringing in his left ear and felt he had some hearing loss. He also had discomfort on the left side of his face. He was wearing his dental splint. His hearing tested as normal. Because he was still having facial discomfort, Dr. Mundy recommended a CT scan, which did not identify any abnormalities.
17. After the CT scan, plaintiff returned to Dr. Mundy on May 5, 1999. At that time, Dr. Mundy found he was wearing his dental splint. He had normal hearing but a "possible temporomandibular joint dysfunction." Dr. Mundy recommends that plaintiff follow up with his dentist and oral surgeon.
18. On his last appointment, November 17, 1999, testing revealed that plaintiff had "mild conductive hearing loss at one frequency in his left ear . . ." Dr. Mundy's rendered an opinion, and the Full Commission finds as fact, that trauma can cause such a hearing loss.
19. Dr. Steven Gold, a general dentist, saw plaintiff beginning March 31, 1999 as a referral from Dr. Miller. He put a crown on plaintiff's fractured tooth and last saw him in May of 1999. Dr. Gold would not see him further after that for additional treatment because he had not paid his balance.
20. Plaintiff also saw Dr. Shapiro of Shapiro Eye Care on April 8, 1999 as referred by Dr. Mundy due to his blurry vision.
21. All of plaintiff's visits to and treatment by medical providers was reasonable in view of the nature and extent of his injuries.
22. Plaintiff continues to need medical services by reason of his compensable injuries and will continue to need such services in the foreseeable future.
23. Plaintiff presented no evidence of loss of earnings or loss of earning capacity.
 ***********
Based on the foregoing Stipulations and Findings of Facts, the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. The person claiming the benefit of compensation has the burden showing that the injury complained of resulted from an accident arising out of and in the course of his employment. The plaintiff met his burden in this case. The assault on plaintiff came during the course and scope of his employment. N.C. Gen. Stat. § 97-2 (6); Henry v. A.C. Lawrence Leather Company,321 N.C. 477, 57 S.E.2d 760 (1950).
2. Plaintiff suffered a compensable injury by accident and plaintiff was entitled to have defendants provide all medical compensation arising from this injury by accident, including the medical bills of Dr. Mundy, Dr. Miller, Dr. Willis, Dr. Shapiro, and Dr. Gold. N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to compensation for the permanent damage he sustained to his face, specifically, the numbness to the left side of his face, the damage to his jaw joint, the blurring of his vision and his hearing loss. The Full Commission finds reasonable compensation to be $1,000.00 for injuries to his face, including the blurring of his vision and his hearing loss. The Full Commission finds reasonable compensation to be $1,000.00 for injuries to plaintiff's jaw. N.C. Gen. Stat. § 97-32 (24).
4. Plaintiff is entitled to continuing medical treatment related to the injury he suffered on June 30, 1998, including the tests recommended by Dr. Willis and follow-up treatment by Dr. Willis and Dr. Mundy. N.C. Gen. Stat. § 97-25.1.
5. Plaintiff's attorney is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 since the defense to this case was not without reasonable grounds and her motion for attorney fees to be taxed to defendants is denied.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff, subject to attorney fees hereafter allowed, $1,000.00 for the injuries to his face and $1,000.00 for the injuries to his jaw, with interest on such amounts at 8 percent per year from August 25, 2000 until paid.
2. Defendants shall pay forthwith, in accordance with the Industrial Commission fee schedule, for past treatment of medical services rendered plaintiff by reason of his compensable injuries.
3. Defendants shall pay for future treatment of medical services rendered plaintiff by reason of his compensable injuries, including the treatment, tests and procedures previously recommended but not done.
4. Defendant shall withhold from plaintiff's compensation the sum of $1,000.00, which is found to be reasonable compensation for plaintiff's attorney, and shall pay such amount directly to plaintiff's attorney.
5. Defendants shall pay the costs.
This 20th day of February 2002.
 S/_____________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER